IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MARKUS CATO #619610 | § | |
| v. | § | CIVIL ACTION NO. 6:05cv18 |
| CAPTAIN WATSON, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Markus Cato, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Cato's complaint is concerned with the validity of a disciplinary case which he received at the Beto Unit for establishing a relationship with a staff member named Ashley Hanson. Cato contends that Hanson was not a staff member at the time that she wrote him the letter for which he received the disciplinary case. As punishment, Cato says that he received 14 days of solitary confinement, 45 days of cell and commissary restrictions, reduction in classification status, and the loss of 30 days of good time credits.

Cato says that he filed his lawsuit as a Section 1983 action because he is ineligible for mandatory supervision and thus has no habeas corpus remedies. He claims that there is "no requirement" that he receive a favorable outcome on his disciplinary case before he can file a civil rights lawsuit.

1

On June 9, 2005, the Magistrate Judge issued a Report recommending that the lawsuit be dismissed. The Magistrate Judge concluded that since Cato was not eligible for release on mandatory supervision, the disciplinary case did not deprive him of any constitutionally protected liberty interests. *See* Malchi v. Thaler, 211 F.3d 953, 959 (5th Cir. 2000); *accord*, Sandin v. Conner, 115 S.Ct. 2293 (1995). The Magistrate Judge rejected Cato's contention that he had constitutionally protected liberty interests in his custodial classification, his time earning classification, the procedures followed in designating his classification, his parole eligibility, his good time credits, or in receiving due process in a prison disciplinary proceeding.

The Magistrate Judge also rejected Cato's contention that he had a liberty interest in not being falsely accused in a disciplinary case, and concluded that Cato's retaliation claim was wholly subsumed within his challenge to the validity of the disciplinary case. The Magistrate Judge specifically observed that Cato could not evade Sandin by the simple expedient of claiming that the disciplinary case violated a "constitutional right to be free from retaliation." Finally, the Magistrate Judge concluded that Cato's constitutional rights were not violated by the fact that his grievances were denied. The Magistrate Judge therefore recommended that Cato's lawsuit be dismissed with prejudice as frivolous.

Cato filed extensive objections, consisting of 22 numbered paragraphs, on June 22, 2005. His first paragraph simply states that he received the Report on June 15, 2005. He then objects to the Magistrate Judge's use of the term "classification status" because this term conforms to old case law; Cato says that the proper terminology now is "time earning class and custody level." This objection lacks merit; the phrase "classification status" was used in the Report in a more generic sense, and as such was not improper.

Third, Cato objects to the Magistrate Judge's comparison of the classification levels G-2 and G-4 to minimum and medium custody, saying that there is a "material difference" between the housing conditions of G-2 and G-4 which did not exist in the past. According to the TDCJ-CID Offender Orientation Handbook, November 2004, inmates classified to G-2 may live in dorms or

cells, and work outside the security perimeter under direct armed supervision. This corresponds to the former classification, set out in the version of the Offender Orientation Handbook dated April 1997, known as "minimum-in."

By contrast, an inmate classified as G-4 must live in a cell, with few exceptions, and may also work outside the fence under direct armed supervision. This corresponds to the former classification known as "medium" custody. The Magistrate Judge's analogy was accurate; G-2 corresponds to a former level of minimum custody, and G-4 corresponds to the former level of medium custody. Cato's objection on this point is without merit.

Next, Cato complains that the Magistrate Judge did not refer to his claim of denial of equal protection. His complaint and brief in support makes clear that his equal protection claim is inextricably bound up in his claim regarding the disciplinary case. As such, Cato's equal protection must fail because he has not shown that this disciplinary case resulted in the denial of a constitutionally protected liberty interest. Malchi, 211 F.3d at 959. Furthermore, Cato's equal protection claim lacks merit because he has made no showing that persons similarly situated to himself received preferential treatment based on a suspect classification. *See* Frontiero v. Richardson, 411 U.S. 677, 683 (1973); Hill v. Estelle, 537 F.2d 214 (5th Cir. 1976). This objection is without merit.

Fifth, Cato argues that the Supreme Court has "very clearly held" that the favorable-outcome rule of Heck v. Humphrey, 114 S.Ct. 2364 (1994), does not apply to prison disciplinary cases. In fact, the Supreme Court has expressly stated that the rule of Heck does apply to prison disciplinary cases. Edwards v. Balisok, 520 U.S. 641, 644, 117 S.Ct. 1584, 1587 (1997); *see also* Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998). This objection is without merit.

Sixth, Cato complains that the Magistrate Judge failed to address his complaint of interference with the "free flow" of his mail, apparently by intercepting his letter from Hanson. However, he conceded in his original complaint that he "was allowed to receive the letter in question." He has thus failed to show that his mail was interfered with. To the extent that Cato

complains that he received a disciplinary case as a result of the letter, his Step Two grievance response points out that the letter indicated that Cato had established a relationship with Hanson while she was an employee, a violation of the rules.

In Nasir v. Morgan, 350 F.3d 366 (3rd Cir. 2003), the Third Circuit upheld a ban on letters between inmates and former inmates. *See also* Akers v. McGuinness, 352 F.3d 1030 (6th Cir. 2003). In Dewitt v. Wall, 41 Fed.Appx 481 (1st Cir., June 21, 2002) (not selected for publication in the Federal Reporter), the First Circuit upheld a policy prohibiting former prison employees from visiting current inmates. Similarly, in Engle v. Tennessee Department of Corrections, 63 Fed.Appx 860 (6th Cir., April 29, 2003) (not selected for publication in the Federal Reporter), the Sixth Circuit dismissed a complaint by a former employee regarding a prohibition against correspondence with inmates.

As these cases make clear, inmates have no absolute right to the "free flow of mail." To the extent that Cato complains that his "right" to correspond with Hanson was impeded, despite the fact that he was allowed to receive the letter, this impediment was rationally related to a legitimate penological interest, the prevention of relationships between staff members and inmates. *See* Turner v. Safley, 107 S.Ct. 2254 (1987). Cato's claim on this point is without merit.

Next, Cato complains that the Magistrate Judge concluded that being subjected to "cruel and unusual punishment" did not satisfy the requirements of Sandin. He says that he was held in conditions "identical to those held to be unconstitutional" in Gates v. Cook, 376 F.3d 323, 334 (5th Cir. 2004). However, Cato claims that his reduction from G-2 to G-4 caused him to be subjected to these conditions, but his placement in that classification status occurred at the Robertson Unit, which is outside of the Eastern District of Texas. His objection on this point is without merit; however, Cato may refile his complaint regarding the conditions of confinement at the Robertson Unit in the proper judicial district.

Cato complains that the Magistrate Judge failed to address the arguments which he raised in his brief supporting his complaint. These arguments are essentially the same as those made in his

original complaint. The Court has reviewed the brief and has found no arguments of merit. This objection is meritless.

Ninth, Cato objects to the Magistrate Judge's determination that placement in solitary confinement, loss of good time, and a reduction in time earning classification does not entitle him to the protections of Wolff v. McDonnell. As noted above, Cato is not eligible for release on mandatory supervision. The Magistrate Judge's conclusion in this regard comports with applicable Fifth Circuit precedent. Malchi, 211 F.3d at 959. His objection on this point is without merit.

Cato next complains that the Magistrate Judge said that his "retaliatory transfer" to the Robertson Unit was not a First and Eighth Amendment violation. As the Magistrate Judge said, the Due Process Clause itself does not create a liberty interest in prisoners being free from intrastate prison transfers because transfer to a maximum security facility, even one with more burdensome conditions, is "within the normal limits or range of custody which the conviction has authorized the State to impose." Meachum v. Fano, 427 U.S. 215, 225 (1976).

As the Magistrate Judge said, Cato's claim of retaliation is bound up in his challenge to the disciplinary case. He is simply trying to evade Sandin by claiming that the disciplinary case was retaliatory and thereby violated a protected liberty interest in and of itself. This argument fails because it changes the Court's focus from the nature of the deprivation, which the Supreme Court mandated in Sandin, to the inmate's subjective opinion of the intent of the decision-maker. Were Cato's argument the law, all inmates could manufacture a liberty interest in any disciplinary case by asserting that the case was given to them in retaliation. This runs contrary to Supreme Court and Fifth Circuit precedent.

In addition, Cato has failed to show that the transfer was in retaliation for the exercise of a protected right, nor that but for the alleged retaliatory motive, the transfer would not have occurred. See Jones v. Greninger, 188 F.3d 322 (5th Cir. 1999); Tighe v. Wall, 100 F.3d 41 (5th Cir. 1996). Cato's objection on this point is without merit.

Cato next asserts that the Court failed to consider "the material differences between custody levels" that exists now, which did not exist at the time of the cases cited in the Report. However, Cato has not shown that the differences in housing which necessarily follow a reduction in classification status are atypical or significant hardships. In effect, Cato argues that any time a prisoner's custody level is lowered, this implicates the Due Process Clause. This view has been rejected by the Fifth Circuit. Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999).[1] His objection on this point is without merit.

In his twelfth objection, Cato says that the Magistrate Judge's conclusion that he lacks a protected interest in parole eligibility is contrary to the Supreme Court's decision in Wilkinson v. Dotson, 125 S.Ct. 1242 (2005). In that case, the Supreme Court held that inmates in Ohio could challenge the validity of state parole procedures through a Section 1983 lawsuit, and not merely through habeas corpus. This holding has been the law in the Fifth Circuit for many years. *See* Serio v. Members, Louisiana State Board of Pardons, 821 F.2d 1112, 1118 (5th Cir. 1987) (holding that where an inmate is challenging the procedures used by the Parole Board, rather than a single allegedly defective hearing, the lawsuit properly proceeds as a civil rights lawsuit rather than a petition for the writ of habeas corpus). The case says nothing about whether or not the inmates involved had a liberty interest in receiving parole. Fifth Circuit precedent is clear on that point; Texas law grants no such interest. Creel v. Keene, 928 F.2d 707, 708-09 (5th Cir. 1991); Allison v. Kyle, 66 F.3d 71, 74 (5th Cir. 1995). Cato's objection on this point is without merit.

Cato next complains that the Court applied "old" Fifth Circuit caselaw to the "new" Texas classification system. He claims that the living conditions of prisoners in minimum and medium custody "used to be identical," but that there are "material differences" now. He has not shown that these conditions implicate any protected liberty interests or represent atypical or significant hardships

---

[1] The Court offers no opinion as to whether the placement of an inmate in administrative segregation could implicate due process concerns. *See* Wilkinson v. Austin, --- U.S. --- (June 13, 2005). This case, which concerns only a change from minimum to medium custody within the general population category, plainly does not.

in relation to the ordinary incidents of prison life, which incidents may well involve transfers between general population custody levels. In Lewis v. Dretke, et al., 54 Fed.Appx. 795 (5th Cir., December 11, 2002) (not selected for publication in the Federal Reporter), a case remarkably similar to the present one, the inmate complained in a Section 1983 action that he was denied due process in a prison disciplinary case, which he alleged was based on false charges. As punishment, the prisoner received 30 days of cell and commissary restrictions, 90 days' loss of telephone privileges, 15 days of solitary confinement, a reduction in classification status, and an increase in his custody level from minimum to medium. He also complained of retaliation. The district court dismissed the lawsuit as frivolous, based on the lack of a protected liberty interest under Sandin, and the Fifth Circuit affirmed the dismissal, citing Malchi v. Thaler, 211 F.3d at 958; Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995); and Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). Cato's objection on this point is without merit.

In his fourteenth objection, Cato contends that the Magistrate Judge erred by concluding that he did not have a liberty interest in not having false disciplinary charges brought against him. He cites a 1987 federal district court criminal prosecution, which in turn relied upon two Supreme Court cases which also dealt with criminal prosecutions. U.S. v. Wallace, 673 F.Supp. 205 (S.D.Tex. 1987). In Wallace, however, the district court specifically noted that the case, as a criminal prosecution, was different from a Section 1983 action brought by a prisoner, and so there was no need to prove that an actual violation of the right occurred in order to maintain the criminal conspiracy charge which was the basis of the prosecution. Wallace, 673 F.Supp at 207.

By contrast, the present case is a Section 1983 lawsuit and not a criminal prosecution. No Fifth Circuit case has held that prisoners have a liberty interest in "not being subjected to false disciplinary charges"; such a holding would eviscerate Sandin in that all challenges to disciplinary cases which are based on the premise that the charges are not true would thereby convey a liberty interest. Instead, as the Supreme Court explained, the operative interest involved is the nature of the deprivation. Sandin, 115 S.Ct. at 2300. In this case, the deprivations imposed upon Cato were not

such as to give rise to a constitutionally protected liberty interest. His objection on this point is without merit.

Next, Cato asserts that the Magistrate Judge erred in holding that "prison rules and regulations are not mandatory." This mis-states the Magistrate Judge's conclusion. In fact, the Magistrate Judge stated that the mandatory nature of the prison rules and regulations did not give rise to a constitutionally protected liberty interest. This comports with the Supreme Court's holding in Sandin. *See* Sandin, 115 S.Ct. at 2298-300. Cato's objection on this point is without merit.

Cato asserts that the Magistrate Judge failed to address his claim of a conspiracy. However, the Fifth Circuit has held that to recover on a claim of a conspiracy, there must be an actual deprivation of a constitutional right; a mere conspiracy to deprive is insufficient. Villanueva v. McInnis, 723 F.2d 414, 418 (5th Cir. 1984). Cato has failed to show an actual deprivation of a constitutional right. His conspiracy claim is without merit.

In his seventeenth objection, Cato asserts that the Magistrate Judge failed to address his "independent retaliation claim." As Cato makes clear in his brief, his retaliation claim is part and parcel of his challenge to the disciplinary case, and an adjudication of his retaliation claim in his favor would necessarily imply the invalidity of his disciplinary case. Cato argues only that his First Amendment protections are "independent" of his other protections, but this does not change the fact that the retaliation claim is subsumed within the challenge to the disciplinary case, and the nature of the deprivations resulting from the disciplinary case did not infringe upon any constitutionally protected liberty interests. Sandin, 115 S.Ct. at 2300. Cato's objection on this point is without merit.

Next, Cato contends that he has made a "strong showing" that "a multitude" of constitutionally protected liberty interests were infringed. The Magistrate Judge did not err in concluding that Cato failed to make such a showing, as explained at length above. This objection is without merit.

In his nineteenth objection, Cato says that the Magistrate Judge erred in determining that he is not entitled to due process during the exhaustion of his administrative remedies. This appears to refer to the Magistrate Judge's conclusion that Cato's claim that his constitutional rights were violated when his disciplinary case was upheld through both steps of the TDCJ-CID grievance procedure lacked merit; the Magistrate Judge reasoned that the fact that Cato filed a grievance which was denied when he thought it should have been granted did not implicate any rights or liberty interests under the Constitution.

The Fifth Circuit has recently held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). This was the essence of the Magistrate Judge's conclusion. Cato's objection on this point is without merit.

In his final three objections, Cato complains that the Magistrate Judge erred in recommending dismissal of his claims as frivolous, in denying him a jury trial, and in denying him a "meaningful hearing." He has offered nothing to show that his claims are not frivolous or that he is entitled to a jury trial, and there is no right to a Spears hearing on claims that have no potential merit. *See* Wilson v. Barrientos, 926 F.2d 480, 483 n.4 (5th Cir. 1991). Cato's objections are without merit.

The Court has conducted a careful *de novo* review of the pleadings in the cause, the Report of the Magistrate Judge, the Plaintiff's objections thereto, and all other documents and filings in the record. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled civil rights lawsuit be and hereby is DISMISSED with prejudice as frivolous. 28 U.S.C. §1915A. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

**SIGNED this 6th day of July, 2005.**

_____
WILLIAM M. STEGER
UNITED STATES DISTRICT JUDGE